FRANCIS F. NEVERMAN, Respondent, v. JANE NEVERMAN et al., Appellants.

(Argued October 17, 1930; decided November 18, 1930.)

*Adelbert F. Jenks, James P. Boyle* and *Ernest P. Lyons* for appellants. The contract, being oral, was, in its entirety, void and unenforcible under the Statute of Frauds, and plaintiff's acts of performance were not unequivocally referable to said oral agreement, nor were they unintelligible or extraordinary except as an incident of ownership, and as they admit of explanation without reference to the alleged oral contract, they are not sufficient to save it from the condemnation of the Statute of Frauds. (*Burns* v. *McCormick*, 233 N. Y. 230; *Lay* v. *Lay*, 75 Ark. 526; *Meigs* v. *Morris*, 63 Ark. 100; *Van Epps*

v. *Redfield*, 69 Conn. 104; *Crawford* v. *Crawford*, 77
S. Car. 205; *Wooley* v. *Stewart*, 222 N. Y. 247; *Salem* v.
*Finney*, 127 Misc. Rep. 387; *Boyles* v. *Strong*, 104 App.
Div. 153; *Wheeler* v. *Reynolds*, 66 N. Y. 227.)

*Robert J. Landon* for respondent. The Statute of
Frauds does not apply because of performance. (*Burns*
*v. McCormick*, 233 N. Y. 230; *Wooley* v. *Stewart*, 222
N. Y. 347; *Hamlin* v. *Stevens*, 177 N. Y. 39; *Freeman*
v. *Freeman*, 43 N. Y. 34; *Salem* v. *Finney*, 127 Misc.
Rep. 387; *Roberge* v. *Winne*, 144 N. Y. 709; *Healy*
v. *Healy*, 55 App. Div. 135; 166 N. Y. 624; *Winne* v.
*Winne*, 166 N. Y. 263; *Messiah Home* v. *Rogers*, 212
N. Y. 311; *Young* v. *Overbaugh*, 145 N. Y. 158; *Lobdell*
v. *Lobdell*, 36 N. Y. 331; *Miller* v. *Ball*, 64 N. Y. 286;
*McKinley* v. *Hessen*, 202 N. Y. 24.)

POUND, J. The action is brought to set aside a deed
dated April 7, 1923, given by defendant Jane Neverman,
now upwards of eighty years of age, to her daughter,
defendant Sarah L. Wilson, conveying a house and lot
No. 626 Chrisler avenue in the city of Schenectady. It
is brought by her son who alleges in his complaint that
in the year 1911 his mother told him he could take the
lot, raise money by a mortgage (her mortgage) to build a
house and take charge of the property as she did not
want to be worried with it any more; that after her death
he should have the property as his own; that she had
given him the lot in her will; that plaintiff thereupon
agreed to take charge of the property and to build a
house thereon as he had proposed; that he has performed
on his part and that she has put it out of her power to
perform on her part.

Plaintiff has had judgment setting aside the deed to
his sister, revesting the title in his mother, impressed with
a trust in his favor that she shall hold the title to the lot
in question until her death and that it shall then pass

to him in fee simple absolute, subject to the payment of $200 to Sarah upon her mother's death.

This judgment is based on findings which are supported by the evidence most favorable to the plaintiff and the question is whether such findings are sufficient to support the judgment. They are in effect that by her will, made in October, 1907, she had devised the lot, which was then worth four hundred dollars, to plaintiff, subject to the payment by him of two hundred dollars to her daughter Sarah; her financial resources were very limited; she could not pay the taxes on the property and was threatened with a street paving assessment; plaintiff wanted her to sell the lots but this she did not want to do; he knew that she had willed the Chrisler avenue lot to him.

That plaintiff in 1911 made an oral agreement as follows: Jane agreed that Francis should build a house on the Chrisler avenue lot with what money he could raise by her bond and mortgage on the house and lot and with his own labor and with some money of his own; that he should attend to renting the house, collecting the rents, keep the house repaired and in condition and pay the taxes, assessments, mortgage interest and installments, insurance and all bills in respect to the property whether the rents sufficed or not, during Jane's lifetime, and that upon her death the property should be his; that the control and management of the property should be left to him during Jane's lifetime with no obligation to account to her and that any payments to her should be voluntary on his part and rest in his discretion as if the house were his; Francis agreed to build the house accordingly and to manage the property and pay the bills and charges in consideration of having the property upon his mother's death; that said agreement was subsequently modified to the extent that Francis was to pay Sarah two hundred dollars as provided in Jane's will of 1907.

That plaintiff, who was a contractor and builder, built the house. He raised $2,800 on his mother's bond and

mortgage, put in some labor on the house valued at $257.40 and spent some money of his own, estimated as being at least $416.31. The total cost of the house is found to amount to $3,579.71. He rented the house and in every way handled it as if it were his own, paying taxes, repairs and insurance, keeping no account of receipts and disbursements. He voluntarily gave his mother fifty dollars a year. He says he made nothing out of the arrangement but he is unable to make an accounting of receipts and disbursements. In April, 1923, Jane gave a deed to Sarah of the lot, reserving to herself a life estate. This deed was obtained by undue influence and without consideration. Sarah had occupied the upstairs flat of the property since July 1, 1923, with her mother without paying rent to plaintiff.

Are any acts of part performance shown which serve to take the oral agreement alleged in the complaint out of the Statute of Frauds (Real Prop. Law; Cons. Laws, ch. 50, § 259) which requires that contracts for the sale of real property must be in writing? The rule frequently applied has recently been restated as follows: " Not every act of part performance will move a court of equity, though legal remedies are inadequate, to enforce an oral agreement affecting rights in land. There must be performance ' unequivocally referable ' to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing." (*Burns* v. *McCormick*, 233 N. Y. 230, 232.)

Applying this test, we are unable to see how the plaintiff can sustain his judgment. The doctrine of part performance is evoked to uphold titles or interests in real property not evidenced in writing. Plaintiff does not claim that the agreement with his mother operated to transfer title *in presenti*. He says he was to have the lot when his mother died as provided in her will and the court has found that such was the contract. What did

he do which is " unequivocally referable " to such a promise without the aid of such words of promise? A son who is a builder who knows that his mother has made a will leaving him real property, at her request borrows money thereon on her bond and mortgage, builds a house with the proceeds, with the aid of his own labor and some of his money, and takes entire charge of the property thereafter without accounting therefor. One adduces some evidence of present ownership, without the aid of the oral contract perhaps, if one takes possession of real property from a stranger and acts as the owner would, but the facts herein established are in themselves neither unintelligible nor extraordinary unless taken as an incident of future ownership. The theory of part performance rests on the fact that one sees from the acts of a man that he has title to or some interest in the property or he would not be doing those things. Do we see from the acts of plaintiff apart from the oral agreement that he was acting under an executory contract by which he was to have title to the real property on the death of his mother? He had all the incidents of present ownership except possession but he does not claim present ownership. He did not occupy the land as owner or under claim of present right. He did not have possession. That was retained by his mother. Whatever right he claims is executory and future. The mother is concededly the owner so long as she lives. It would not be extraordinary if the son, managing his mother's affairs as her agent or employee, did the same things that plaintiff did in relation to the property. No one merely observing the conduct of the son would necessarily infer that he claimed an equitable future interest in the premises. All might be fairly related to his hope and expectation that his mother would not change her will and that the property would come to him at her death.

It is perhaps unfortunate that plaintiff did not comprehend that wills could be changed and oral promises relating

to the title of real estate broken. On the other hand, we fail to see wherein his mother has unjustly enriched herself at his expense or dealt inequitably with him. She put $2,800 into the property and he took all the rents. He says he was not the gainer thereby, that the rents did not exceed the disbursements, but we cannot relieve him from a bad bargain. He might have profited by the transaction. Relatives should deal with one another in business matters like strangers or stand to suffer from their indulgent failure to comply with rules which strangers may be expected to enforce.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dimissed, with costs in all courts.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.